IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DERIC DAVISSON,

       Plaintiff,

vs.   No. CIV-03-802 JC/RHS

AMERICA WEST AIRLINES, INC.,
a Foreign Corporation,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment, filed May 17, 2004 (*Doc. 18*). The Court, having considered the Motion, memoranda, the relevant authority, and being otherwise fully advised, finds Defendant's Motion well-taken and it is, therefore, GRANTED.

**I.    Background**

Unless otherwise noted, the following facts are either undisputed or portrayed in the light most favorable to Plaintiff. Plaintiff is employed by America West Airlines ("Defendant") as a Customer Service Representative ("CSR") assigned to the ticket counter. Beginning on September 10, 2002 Plaintiff was temporarily prevented from performing all duties of his CSR position, for he experienced symptoms from a permanent joint condition known as "Charcot's joint syndrome" and was, as periodically noted by his physician, unable to stand or walk.[1] Compl. at ¶ 19; Pl's Resp. at 1. Indeed, from September 10, 2002 through late September of 2003, Plaintiff was unable to put any

---

[1] The Charcot's joint syndrome Plaintiff suffers from is related to his underlying disease, diabetes.

weight on his foot and was unable to bend, crouch, squat, push or pull. Davisson Dep. at 131:21-132:2. A note from Plaintiff's doctor dated September 11, 2002 states that Plaintiff would be on crutches for two weeks and needed to be on light, non-weight bearing duty. Def's Mem., Ex. 9. On October 8, 2002 Plaintiff provided Defendant with a doctor's note releasing him to return to work without limitation. On October 14, 2002, however, Plaintiff provided another note from his doctor stating that he needed to be on light, non-weight bearing duty for approximately one month or until further notice. Again on October 28, 2002, Plaintiff provided a note from his doctor stating that Plaintiff needed to remain on non-weight bearing, light duty for approximately one more month.

Plaintiff's duties as counter CSR included checking in passengers and their bags, printing boarding passes, printing baggage tags and affixing them to baggage, and placing bags on the conveyor belt.[2] These duties involved, among other things, standing, walking, squatting, lifting and reaching. On September 23, 2002 Plaintiff's physician, for the first time, identified Plaintiff's physical problem as a "permanent disability," releasing Plaintiff to return to work in a "relatively sedentary position with minimal standing and/or walking." Plaintiff returned to work full-time in December of 2003, at which time Defendant made reasonable accommodations, enabling Plaintiff to perform the essential functions of his duties.

On September 11, 2002, Plaintiff had requested that Defendant place him on light duty for approximately two weeks. Defendant denied Plaintiff's request for full-time light duty, though Defendant allowed Plaintiff to perform some light duty to the extent that such work existed. At that

---

[2]Defendant claims, and Plaintiff denies, that ticket counter CSRs are also occasionally required to push passengers in wheelchairs, a function more regularly required of CSRs assigned to the gate. This factual dispute is immaterial, for Plaintiff was admittedly unable to perform other essential functions of his job during the relevant time.

time, Plaintiff also requested an array of accommodations which he contends would have enabled him to fully perform his CSR duties for the eleven months in question. His requested accommodations included removing the printer underneath a work area at the far end of the ticket counter and leaving the doors open to create room for Plaintiff's legs if he was seated at the counter. Plaintiff further suggested that a full-time employee who worked in baggage services switch to working part-time at the ticket counter and part-time in baggage so that Plaintiff could work part-time in baggage services. Defendant rejected Plaintiff's proposal to switch jobs with another employee.

Plaintiff filed a charge of disability discrimination with the Equal Opportunity Employment Commission ("EEOC"). After receiving a right to sue letter, Plaintiff filed his Complaint for Damages and Injunctive Relief for Violations of the Americans With Diabilities Act in this Court on July 8, 2003 (*Doc. 1*). It is Defendant's failure to accommodate Plaintiff in the ways he requested during the time when he was unable to walk or stand that forms the basis of Plaintiff's claims[3]. Defendant presently moves the Court for summary judgment disposition in its favor, asserting (1) that Plaintiff's physical limitations were temporary prior to late September 2003 and, as such, are not covered by the ADA; (2) even if the eleven-month disability is covered, Plaintiff was unable to perform the essential functions of his job with or without accommodation; and (3) Plaintiff has failed to make a prima facie case of any sort under the ADA.

---

[3]Because Plaintiff filed his Complaint in July of 2003, before he returned to work with accommodations in December of 2003, the allegations in his Complaint (ie, "[C]ommencing in the fall of 2002 America West stopped accommodating Plaintiff and instead placed him on unpaid leave where he remains today." Compl. at ¶ 24.) differ from the more limited allegations in his Response Brief ("America West failed and refused to accommodate his disabilities from September 2002 until December 2003 and that had America West reasonably accommodated him in his position of Customer Service Representative he would not have lost wages and benefits for that period." Resp. at 1. *See also*, Davisson Dep. at 136:10-12). Accordingly, the Court limits its analysis of events to September 2002 through December 2003.

## II.     Legal Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

## III.    Discussion

The Americans with Disabilities Act ("ADA") prohibits discrimination in the workplace

against qualified persons with a disability. 42 U.S.C. § 12101 *et seq*. To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that he is disabled within the meaning of the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that he was discriminated against because of his disability. *Davidson v. AOL, Inc*., 337 F. 3d 1179 (10th Cir. 2003).

*A. Disability Under the ADA*

The ADA defines a disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12116; *Pack v. Kmart Corp.*, 166 F.3d 1300 (10th Cir. 1999). Consideration of whether a plaintiff has an impairment that substantially limits one or more of his life activities involves a three-step analysis. *Doyle v. Oklahoma Heart, Inc.*, 213 F.3d 492 (10th Cir. 2000) (citing *Bragdon v. Abbott*, 524 U.S. 624 (1998)). First, the Court must determine whether Plaintiff has an impairment. Second, the Court must identify the life activity upon which Plaintiff relies and determine whether it constitutes a major life activity under the ADA. Third, the Court asks whether the impairment substantially limited the major life activity. Whether a plaintiff has an impairment within the meaning of the ADA, and whether the conduct affected is a major life activity for purposes of the ADA, are questions of law. However, a plaintiff is required to articulate with precision the impairment alleged and the major life activity affected by that impairment. *Poindexter v. Atchison, Topeka & Santa Fe Railway*, 168 F.3d 1228, 1230 (10th Cir. 1999) (citing 29 C.F.R. § 1630.2(h) (1998)).

In this case, it can be presumed that Plaintiff's inability to stand or walk for the given period of time affected his major life activities during that time. Defendant argues, however, that the

physical limitations resulting from Plaintiff's Charcot's joint syndrome caused him to be temporarily disabled and such symptoms were, until late September of 2003, characterized as short-term and expected to resolve soon. Temporary disabilities, Defendant argues, are not covered by the ADA as a matter of law. In support of this position, Defendant correctly argues that the Supreme Court has articulated that "[t]he impairment's impact must also be permanent and long-term." *Toyota Motor Mfg., Kentucky, Inc., v. Williams*, 534 U.S. 184, 197 (2002) (interpreting 29 C.F.R. § 1630.2(j)(2), which states "duration and expected duration of impairment" is a factor in determining whether an impairment is a disability).

In response, Plaintiff urges the Court to view his Charcot's joint symptoms as part of a continuing disability caused by his underlying disease of diabetes, a disease which is not temporary and which Defendant has known of for years and has accommodated in the past. Plaintiff argues that collectively, the secondary afflictions from which Plaintiff has suffered, including loss of vision and Charcot's joint syndrome, suffice to satisfy the permanent or long-term impact requirement under the ADA. In this instance, the Court disagrees.

Because diseases often involve primary or secondary afflictions which are intermittently symptomatic, courts view the resulting limitations as the "disability" for purposes of the ADA. Accordingly, a person as is not automatically "disabled" because that person suffers from a disease without regard to the presence of disabling symptoms at any given time. As Defendant points out, an affliction with intermittent symptoms, such as Plaintiff's Charcot's joint syndrome (even if it is a permanent condition), cannot be likened to an inherently limiting affliction such as permanent paralysis. While the Court recognizes the hardships resulting from Plaintiff's diabetes and its complications, disability determinations are based on actual physical limitations when they are

6

manifest. *See* 29 C.F.R. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis or the impairment the person has, but rather on the affect of that impairment on the life of the individual."). Moreover, the Supreme Court has recognized that Type I diabetes is not *inherently* limiting and is not, in and of itself, a disability. *See, e.g., Sutton v. United Airlines, Inc.*, 527 U.S. 471, 483 (1999) (emphasis added).

Here, all evidence before the Court indicates that prior to late September of 2003, Defendant was not made aware that the disabling symptoms from Plaintiff's Charcot's joint syndrome were anything other than (1) temporary in nature and expected to improve soon; and (2) that they precluded Plaintiff from performing his CSR job, with or without reasonable accommodations as discussed below.

### B. Reasonable Accommodation

The ADA requires covered entities, including private employers, to provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A); *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002). To establish a prima facie case of failure to accommodate, Plaintiff must show that (1) he is a qualified individual with a disability; (2) Defendant had notice of his disability; (3) he could perform the essential functions of his job with reasonable accommodations, but (4) Defendant would not make such accommodations. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001). A two-part analysis is applied to determine whether an individual is qualified under the first prong.

First, the court determines whether the individual can perform the

> essential functions of the job....Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable [him] to perform those functions.

*Mason v. Avaya*, 357 F.3d 1114 (10th Cir. 2004) (quoting *Davidson v. AOL*, 337 F.3d at 1190); *see also* 42 U.S.C. § 12111(8) (defining "qualified individual with a disability").

Plaintiff maintains that his Charcot's joint syndrome precluded him from performing his CSR duties during the time in question but that given reasonable accommodation, he would have been able to perform the essential functions. Defendant argues that no amount of *reasonable* accommodation at that time would have enabled Plaintiff to perform the essential job functions. The parties dispute which functions of a ticket-counter CSR are "essential."

In that vein, Plaintiff bears the burden of establishing his ability to perform essential functions. *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). "Essential functions" are the "fundamental job duties of the employment position the individual with the disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Notwithstanding the Court's duty to view the facts most favorably to Plaintiff for purposes of this Motion, courts are directed by statute to consider (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job. 29 C.F.R. § 1630.2(n)(3). Further, some deference is due an employer's description of essential job functions, and courts should not second guess the employer or require the employer to lower company standards. 42 U.S.C. § 12111(8); *Davidson,* 337 F.3d at 1191; *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001).

Even if the Court finds Plaintiff's disability from the Charcot's joint syndrome not temporary and within the purview of the ADA, Plaintiff, by his own admission, was unable to stand or walk and could bear no weight on his foot. Plaintiff does not dispute that the CSR position required him to stand or walk, nor does he contest that his own doctor provided written communication, which Plaintiff furnished to Defendant, indicating that Plaintiff required light duty involving no weight bearing for approximately eleven months. No amount of reasonable accommodation by Defendant could have changed his limitations during that time, for certainly Plaintiff would have been required to stand up or walk, at least for short periods of time and for short distances. Indeed, even after Plaintiff returned to work with accommodation in December of 2003, he was still required to do some standing, walking, bending and lifting; the accommodation allowed him to sit when he was not performing the more physical duties. Davisson Dep. at 133:12-22. Accordingly, even if Defendant had modified the ticket counter as Plaintiff requested in September 2002, Plaintiff would still have been unable to do his job. Moreover, it is well-settled that Defendant is under no duty to (1) reassign Plaintiff where no position is vacant or (2) to create light duty where none exists. *Bristol v. Bd. of County Commissioners*, 281 F.3d 1148, 1167 (10th Cir. 2002) (determining that a position is "vacant" for purposes of duty to accommodate by transfer only where employer knows at time of request that an opening exists or will exist in the fairly immediate future); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174-75 (10th Cir. 1999) ("It is not reasonable to require an employer to create a new job for the purpose of reassigning an employee to that job" nor is it reasonable "to require an employer to bump another employee in order to reassign a disabled employee to that position."); *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 809 (5th Cir. 1997) (no employer duty "to create 'light duty' jobs to accommodate") (citing *Turco v. Hoechst Celanese Chemical Group, Inc.*, 101

F.3d 1090, 1094 (5th Cir. 1996)).

**IV.     Conclusion**

In sum, the Court finds no genuine issue of material fact in need of resolution in this matter. Specifically, Plaintiff's condition was represented to Defendant as temporary until September 2003. Moreover, Plaintiff has offered insufficient evidence from which a reasonable fact-finder might conclude that Plaintiff was qualified to perform the essential functions of his customer service job, with or without reasonable accommodation as defined by law, from September 10, 2002 through December of 2003.  Accordingly, the Court finds no genuine issue of material fact on Plaintiff's claim that Defendant unlawfully failed to accommodate him during that time period and this claim must fail as a matter of law.  The Court further finds no other basis for Plaintiff's alleged discrimination claim under the ADA.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, filed May 17, 2004 (*Doc. 18*), is GRANTED and Plaintiffs claims are hereby dismissed in their entirety with prejudice.

DATED October 11, 2004.

SENIOR UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:

   Christopher M. Moody, Esq.
   Repps D. Stanford, Esq.

       Moody & Warner, P.C.
       Albuquerque, New Mexico

Attorneys for Defendant:

       Lisa Mann, Esq.
       Alex C. Walker, Esq.
       Modrall, Sperling, Roehl, Harris & Sisk, P.A.
       Albuquerque, New Mexico